BIRCH, C.J., and DROWOTA, ANDERSON and REID, JJ., concur.

Frederick Turner RAY, a Minor by Next Friend and Natural Mother, Erma L. HOLMAN, Plaintiff/Petitioner,

v.

BIC CORPORATION, Defendant/Respondent.

Supreme Court of Tennessee, at Nashville.

July 15, 1996.

L. Anthony Deal, Paul Berry Cooper, III, Memphis, for Plaintiff/Petitioner.

J. Brook Lathram, Susan M. Clark, Memphis, for Defendant/Respondent.

## OPINION

WHITE, Justice.

In this Rule 23 case we are called upon to address whether our products liability statute, codified at Tennessee Code Annotated Section 29–28–101 to –108, provides for a risk-utility test in addition to the consumer expectation test for determining whether a product is unreasonably dangerous. For the reasons set forth below, we hold that our present statute provides for two tests: the consumer expectation test and the prudent manufacturer test. The latter requires risk-utility balancing in its application.

### I. Facts

On September 3, 1982, the Memphis apartment building in which Erma Holman and her two minor sons, Frederick and Donnie Ray, were residing was destroyed by fire. A cigarette lighter, manufactured by the BIC Corporation, had been left in the apartment by a friend of Holman's.[1] When Holman left to walk her oldest son, Donnie, to the bus stop, four-year old Frederick was left alone in the apartment. When Holman returned, the apartment was ablaze. Young Frederick sustained serious injuries, including incapacitating brain damage.

Ten years later, on September 3, 1992, Holman filed a lawsuit against BIC Corporation on behalf of her minor son, Frederick. In her complaint, she alleged that the source

---

1. Holman's friend tried repeatedly, but unsuccessfully, to get the lighter to light before leaving it there early on the morning of the fire.

of the fire,[2] the BIC cigarette lighter, was an "unreasonably dangerous" product within the meaning of Tennessee Code Annotated Section 29–28–102(8) because it was not child-resistant. Specifically, plaintiff alleged that "[d]efendant ... manufactured an unreasonably dangerous disposable cigarette lighter which was unreasonably dangerous at the time it left the control of the Defendant." Additionally, plaintiff contended that defendant was liable because the lighter "would not be put on the market by a reasonably prudent manufacturer or seller assuming that [the manufacturer or seller] knew of its dangerous condition."

BIC Corporation moved for summary judgment on the basis that the product was not unreasonably dangerous. Plaintiff countered with the affidavit of an engineer whose opinion was that the lighter could have been manufactured without significantly increasing the cost to include child-resistant features which would more likely than not have prevented the injuries.

The federal district court granted summary judgment to defendant. Plaintiff appealed to the Sixth Circuit Court of Appeals which has certified this question for our consideration:

whether Tenn.Code Ann. § 29–28–102(8), in addition to the "consumer expectation" test, provides for another separate and distinct test for determining whether a product is "unreasonably dangerous," i.e., the "risk-utility" test.

## II. Background of the Act

■ The Tennessee Products Liability Act provides that a manufacturer or seller may be liable for injuries caused by a product that is determined to be in a "defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn.Code Ann. § 29–28–105(a) (1980 Repl.).

2. Although BIC Corporation challenges the allegation that the lighter was the source of the fire, the allegation was accepted as true for purposes of the summary judgment motion.

3. Clearly, the current Act allows recovery for injuries caused by either a product in a "defective condition" or an "unreasonably dangerous" product. In 1978 the General Assembly removed the requirement of establishing both conditions.

In this case, plaintiff alleges that the BIC cigarette lighter was an unreasonably dangerous product.[3] The Act defines an unreasonably dangerous product as

a product [that] is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, or a product [that] because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that [the manufacturer or seller] knew of its dangerous condition.

Tenn.Code Ann. § 29–28–102(8)(1980 Repl.).

Unquestionably, the first clause of the definition establishes a "consumer expectation" test for determining whether a product is unreasonably dangerous. That test, defined generally as, whether the product's condition poses a danger beyond that expected by an ordinary consumer with reasonable knowledge, has been employed by many states. *See e.g., Caterpillar Tractor v. Beck,* 593 P.2d 871 (Alaska 1979); *Barker v. Lull Eng'g Co., Inc.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978)(one prong of test); *Ontai v. Straub Clinic and Hosp., Inc.,* 66 Haw. 237, 659 P.2d 734 (1983); *Lester v. Magic Chef,* 230 Kan. 643, 641 P.2d 353 (1982); *Rahmig v. Mosley Machinery Co.,* 226 Neb. 423, 412 N.W.2d 56 (1987); *Woods v. Fruehauf Trailer Corp.,* 765 P.2d 770 (Okla.1988). In a host of cases, decided prior to and after the passage of the Products Liability Act, Tennessee courts have used the standard. *See generally Gann, et al. v. International Harvester Co.,* 712 S.W.2d 100, 105 (Tenn. 1986); *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 692 (Tenn.1984); *Reece v. Lowe's of Boone, Inc.,* 754 S.W.2d 67, 71 (Tenn.App.), *perm. to appeal denied,* (Tenn.1988). While many states are abandoning its approach,[4] or meshing it with

1978 Tenn. Pub. Acts, Ch. 703, § 5 (codified at Tenn.Code Ann. § 29–28–105(a)(1980 Repl.)); *Smith v. Detroit Marine Engineering Corp.,* 712 S.W.2d 472, 474–75 (Tenn.App.1985), *perm. to appeal denied,* (Tenn.1986).

4. The authors of the Restatement (Third) of Torts, still in draft form, have proposed separate standards of liability for manufacturing and design defects applying a strict liability standard to

more sophisticated proof requirements, it has remained unchanged in our statute for nearly two decades. *See generally* William L. Prosser & W. Page Keeton, *The Law of Torts,* § 99, at 669 (5th ed.1984); M. Stuart Madden, *Products Liability* § 6.23 (2d ed.1994); Schwartz, *Forward: Understanding Products Liability,* 67 Cal.L.Rev. 435 (1979); Keeton, *Products Liability Design Hazard and the Meaning of Defect,* 10 Cumb.L.Rev. 293, 310 (1979).

It is also unquestionable that defendant in this case would be entitled to summary judgment if the consumer expectation test is the only applicable standard for determining unreasonable dangerousness. An ordinary consumer would expect that a cigarette lighter, left in the hands of a young child, could cause danger and injury concomitant to that occurring in this case. The more difficult question is whether that conclusion ends the inquiry. Again, unquestionably, it does not.

In addition to the consumer expectation test clearly set forth in the first clause of the statutory definition, the second clause, joined disjunctively with the first, establishes a second test. That clause provides that a product is unreasonably dangerous if a reasonably prudent manufacturer or seller, aware of the product's dangerous condition, would not put the product on the market. Tenn. Code Ann. § 29–28–102(8)(1980 Repl.). We must determine whether that test, which we will refer to as the "prudent manufacturer" test, is a separate, distinct test from the consumer expectation test found exclusive by the district court or the risk-utility test urged by the plaintiff.

## A. Consumer Expectation Test v. Prudent Manufacturer Test

■ The consumer expectation test, clearly set forth in the first clause of the definition section, derives from the *Restatement (Second) of Torts,* Section 402A. Comment (i) to that section states that before a product is deemed unreasonably dangerous it must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts, § 402A, comment i; *Vincer v. Esther Williams All–Aluminum,* 69 Wis.2d 326, 230 N.W.2d 794, 798–99 (1975).[5] Under this test, a product is not unreasonably dangerous if the ordinary consumer would appreciate the condition of the product and the risk of injury.

■ By contrast, the prudent manufacturer test imputes knowledge[6] of the condition of the product to the manufacturer. The test is whether, given that knowledge, a prudent manufacturer would market the product. *Phillips v. Kimwood Machine Co.,* 269 Or. 485, 525 P.2d 1033, 1036 (1974).

Some jurisdictions—notably Washington and Oregon—have, at times, concluded that the two approaches are really one, representing "two sides of the same coin." *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wash.2d 111, 587 P.2d 160, 164 (1978); *Phillips v. Kimwood Machine Co.,* 269 Or. 485, 525 P.2d 1033, 1036 (1974). In explaining this conclusion these courts have suggested that "a manufacturer who would be negligent

---

the former and a risk-utility standard to the latter. Restatement (Third) of Torts: Products Liability § 2, comment a (Tentative Draft No. 1, 1994).

5. At least two states have consistently followed an exclusive consumer expectation approach. Kansas, in *Lester v. Magic Chef,* 230 Kan. 643, 641 P.2d 353 (1982), adopted the approach as in accord with the Restatement's comment i. *See also Betts v. General Motors Corp.,* 236 Kan. 108, 689 P.2d 795 (1984); *Barnes v. Vega Indus.,* 234 Kan. 1012, 676 P.2d 761 (1984). Likewise, Nebraska has persisted in its exclusive use of the consumer expectation test, although there, it is referred to as a "user-contemplation" test. *Rahmig v. Mosley Machinery Co.,* 226 Neb. 423, 412

N.W.2d 56 (1987); *Adams v. American Cyanamid,* 1 Neb.App. 337, 498 N.W.2d 577 (1992).

6. Some versions of a prudent manufacturer test may deem the manufacturer to have actual knowledge of the product's dangerousness, despite the unreasonableness of that assumption. Other approaches deem the manufacturer to have actual knowledge of the product's dangerousness only to the extent that a reasonable manufacturer should have known. The former is a strict liability approach, the latter a traditional negligence approach. Birnbaum, *Unmasking the Test for Design Defect: From Negligence to Warranty to Strict Liability to Negligence,* 33 Vand. L.Rev. 593, 618 (1980)(hereafter Birnbaum, *supra* at ——).

in marketing a given product …, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it." *Phillips v. Kimwood Machine Co.*, 525 P.2d at 1037.

Clearly, however, as the courts combining the tests have come to realize, the focus of the two tests is entirely different. The consumer expectation test is, by definition, buyer oriented; the prudent manufacturer test, seller oriented. Notwithstanding the difference in focus, these courts predict that the tests "should produce similar results." *Estate of Ryder v. Kelly–Springfield Tire Co.*, 587 P.2d at 164.

■ While this prediction may be accurate, we see distinct and important differences in the consumer expectation and the prudent manufacturer tests under our statute. First, the former requires the consumer to establish what an ordinary consumer purchasing the product would expect. The manufacturer or seller's conduct, knowledge, or intention is irrelevant. What is determinative is what an ordinary purchaser would have expected. Obviously, this test can only be applied to products about which an ordinary consumer would have knowledge. By definition, it could be applied only to those products in which *"everyday experience* of the product's users permits a conclusion…." *Soule v. General Motors Corp.*, 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 617, 882 P.2d 298, 308 (1994)(emphasis in original). For example, ordinary consumers would have a basis for expectations about the safety of a can opener or coffee pot, but, perhaps, not about the safety of a fuel-injection engine or an air bag.

■ Alternatively, the prudent manufacturer test requires proof about the reasonableness of the manufacturer or seller's decision to market a product assuming knowledge of its dangerous condition. What the buyer expects is irrelevant under this test. In contrast to the consumer expectation test, the prudent manufacturer test is more applicable to those circumstances in which an ordinary consumer would have no reasonable basis for expectations. Accordingly, expert testimony about the prudence of the decision to market would be essential.

The straight-forward, unambiguous language of our statute establishes two distinct tests for ascertaining whether a product is unreasonably dangerous: the consumer expectation test and the prudent manufacturer test. In addition to having completely different focuses, the two tests have different elements which require different types of proof. The two tests are neither mutually exclusive nor mutually inclusive. While the statute does not limit applicability of the tests, the prudent manufacturer test will often be the only appropriate means for establishing the unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation. Likewise, it may form the sole basis for establishing liability for a product whose dangerousness is the result of a latent defect.

We decline to weave the two tests into one. As the Oregon courts noted after revising their previous combined approach:

> [T]he distinction between the [two] tests is not merely academic. The result in some, perhaps most, product liability cases might be the same regardless of which test the jury applies; nonetheless, in some cases, the difference in the test can affect the outcome. A jury might well conclude that a product is not unreasonably dangerous under the cost/benefit calculus of an omniscient reasonable manufacturer but is still unsafe in a manner, or to an extent, not expected by an ordinary consumer…. The difference in perspective—"reasonable manufacturer" versus "ordinary consumer"—can, as a practical matter, make all the difference.

*Burns v. General Motors Corp.*, 133 Or.App. 555, 891 P.2d 1354, 1357–58 (1995).

### B. Prudent Manufacturer Test v. Risk–Utility Test

Having concluded that our statute incorporates a test other than the consumer expectation test for proving the unreasonable dangerousness of a product, we turn now to the issue of the relationship, if any, between that test and the risk-utility test urged by plaintiff.

Our research has revealed that, in reality, what plaintiff refers to as the risk-utility test is more correctly an analysis which involves the balancing of numerous factors. Under the approach, the court balances the usefulness of the product against the magnitude of risk or danger likely to be caused by the product. *Prosser & Keeton on Torts* 699 (P. Keeton ed 5th ed.1984).

In order to determine whether the second test in our statute, which we have called the prudent manufacturer test, anticipates a risk-utility analysis, we turn to the most commonly used description of both. Generally stated, the prudent manufacturer test imposes liability in circumstances in which a reasonably prudent manufacturer with knowledge of a product's dangerousness would not place the product in the stream of commerce. As expanded by Dean Wade, the test has evolved into a consideration of various factors which must be weighed to determine whether the manufacturer was reasonably prudent. The factors include the usefulness and desirability of the product, the safety aspects of the product, the availability of a substitute product which would meet the same need, the manufacturer's ability to eliminate the unsafe character, the user's ability to avoid danger, the user's awareness of the danger, and the feasibility of spreading the loss. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss.L.J. 825, 837–38 (1973). Thus, Dean Wade summarizes the test as follows: "A [product] is not duly safe if it is so likely to be harmful to person [or property] that a reasonable prudent manufacturer, who had actual knowledge of its harmful character, would not place it on the market." *Id.* at 839–40.[7]

■ In effect, the prudent manufacturer test, by definition, requires a risk-utility analysis. The determination of whether a product is unreasonably dangerous turns on whether, balancing all the relevant factors, a prudent manufacturer would market the product despite its dangerous condition. Naturally, a prudent manufacturer would consider usefulness, costs, seriousness and likelihood of potential harm, and the myriad of other factors often lumped into what plaintiff called a risk-utility test, *see Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671, 673 (1994)(citing Preliminary Draft No. 1 (April 20, 1995) Restatement (Third) of Torts: Products Liability, § 101, Reporter's Notes to comment g). These factors mirror those designated by Deans Wade and Keeton as appropriate for consideration under the prudent manufacturer test.

■ Defendant's argument that the Tennessee General Assembly could not have intended to include the risk-utility test, (or what we have determined to be a risk-utility analysis), in the 1978 enactment of the Products Liability Act since the test originated that same year[8] is not persuasive. We must interpret the plain language of the legislation, *Mercy v. Olsen*, 672 S.W.2d 196 (Tenn. 1984), and we must give effect to "every word, phrase, clause and sentence...." *Tidwell v. Collins*, 522 S.W.2d 674, 677 (Tenn.1975). Clearly, the legislation includes a second test to determine whether a product is unreasonably dangerous. Whether that test—whatever name it is ultimately given— is the same as an approach originating elsewhere is of no consequence.

■ In an aberrant move, California adopted a hybrid consumer expectation risk-utility test that shifts the burden of proof to defendant to establish "that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design."

---

7. Dean Keeton's prudent manufacturer test similarly relies on balancing of various factors, but differs in the time at which knowledge of the harmful character is imputed. Keeton, *Manufacturer's Liability: The Meaning of "Defect" in the Manufacture and Design of Products*, 20 Syracuse L.Rev. 559, 568 (1969). Since our statute resolves this issue, the distinction between the Keeton and Wade approach is of no consequence to our analysis. Tenn.Code Ann. § 29–28–105(b)(1980 Repl.).

8. Defendant's approach to the risk-utility test is that it is "the" test adopted by California in its 1978 decision of *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978). In fact, a risk-utility analysis, had been employed by many states prior to 1978. The California difference, however, was the shifting of the burden of proof onto defendant. Birnbaum, *supra*, at 605.

*Barker v. Lull Engineering Co., Inc.,* 143 Cal.Rptr. 225, 573 P.2d at 452. Setting aside this aberration, it is obvious that the prudent manufacturer test set out in our statute and the analysis which plaintiff refers to as the risk-utility test are substantially the same.[9] Stated more precisely, we hold that the prudent manufacturer test set forth in the Tennessee Products Liability Act requires a risk-utility balancing of factors, including those factors identified as part of the Wade–Keeton prudent manufacturer test.[10] The test under our statute does not include a shifting of the burden of proof to defendant. Rather, the burden remains on plaintiff in a products liability action to establish injury as a result of an unreasonably dangerous product. Plaintiff may meet this burden either by establishing that the product was dangerous beyond that contemplated by an ordinary consumer (consumer expectation test) or by establishing that a reasonably prudent manufacturer, assumed to know the product's dangerous condition, would not have marketed the product (prudent manufacturer test employing risk-benefit analysis).

Our statute does not limit the application of either test to only certain types of actions. Nonetheless, the consumer expectation test will be inapplicable, by definition, to certain products about which an ordinary consumer can have no expectation. Despite the potentially overlapping nature of the tests, plaintiff here relied only on the second test, which we have defined as requiring consideration of numerous factors. Our statute clearly authorizes plaintiff to attempt to establish the unreasonable dangerousness of a product by employing a prudent manufacturer test which includes a risk-utility balancing approach.

The Clerk will transmit this opinion in accordance with Rule 23, Section 8 of the Rules of the Supreme Court. The costs in this Court will be taxed equally between plaintiff and defendant.

BIRCH, C.J., and DROWOTA, ANDERSON and REID, JJ., concur.

---

9. Defendant argues that the two approaches are different given the common-law origin of the tests and the distinct focuses of each test. As we have noted, the prudent manufacturer test focuses on the reasonableness of the manufacturer's conduct. Conversely, defendant argues that the risk-utility test focuses not on the manufacturer but on the product itself by imposing a cost-benefit analysis. This argument is one of mere semantics. While defendant is correct in its contention that a risk-utility approach requires a balancing of the usefulness of the product as compared to the dangerousness of the risk, it is the manufacturer who, prior to determining whether to market the product, analyzes the utility and the benefit. The reasonableness of that decision, in light of the utility and risk, is the focus of a risk-utility analysis. It varies little, if at all, from the analysis under a prudent manufacturer approach.

10. These factors include:
   (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
   (2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.
   (3) The availability of a substitute product which would meet the same need and not be as unsafe.
   (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
   (5) The user's ability to avoid danger by the exercise of care in the use of the product.
   (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
   (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

Wade, *On The Nature of Strict Tort Liability for Products,* 44 Miss.L.J. 825, 837–38 (1973).