Sandra GREENE, Plaintiff,

v.

BROWN & WILLIAMSON TOBACCO CORP., et al., Defendants.

No. 99–2246 M1/A.

United States District Court,
W.D. Tennessee,
Western Division.

Nov. 15, 1999.

884

Curtis D. Johnson, Jr., Johnson & Settle, Memphis, TN, for Sandra Greene, plaintiff.

Lee J. Chase, III, Glankler Brown Gilliland Chase Robinson & Raines, Memphis, TN, Charles S. Cassis, Andrew J. Horne, Brown Todd & Heyburn, PPLC, Louisville, KY, for Brown and Williamson Tobacco Corporation, defendant.

Daniel Frederick Peel, Albert C. Harvey, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, Wade R. Wright, Gregory R. Hanthorn, Jones Day Reavis & Pogue, Atlanta, GA, for R.J. Reynolds Tobacco Company, defendant.

Jill M. Steinberg, Leo Maurice Bearman, Jr., Baker Donelson Bearman & Caldwell, Memphis, TN, Andrew D. Carpenter, Mark Dover, William L. Allinder, Shook Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Company, Inc., Lorillard, Inc., defendants.

Jimmy Moore, Memphis, TN, for Jimmy Moore, miscellaneous.

James Allen, U.S. Magistrate Judge, Memphis, TN, for James Allen, miscellaneous.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

McCALLA, District Judge.

This case is before the Court on Defendants' Motion To Dismiss for Failure to State a Claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Defendants assert four defects in Plaintiff's pleading: (1) that Plaintiff's claims are barred by Tennessee's statute of repose; (2) that Plaintiff's failure to warn claims are preempted by federal law; (3) that Plaintiff fails to state a claim under the Tennessee product liability statute; and (4) that Plaintiff fails to state a claim for civil conspiracy because Plaintiff fails to plead an underlying tort.

For the reasons stated below, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The Court HOLDS that: (1) Tennessee's ten year statute of repose applies to all of Plaintiff's claims; (2) those strict liability and negligence allegations that are premised upon a duty to warn consumers are preempted by federal law; (3) Plaintiff fails to sufficiently allege that Defendants' products are defective under the "consumer expectation" test; but that Plaintiff's allegations are sufficient to state a claim under the "prudent manufacturer" test; and (4) Plaintiff sufficiently pleads an underlying tort to sustain a claim for civil conspiracy.

## I. BACKGROUND

Plaintiff, Sandra Greene, filed this action in Tennessee state court on February 19, 1999. The Complaint alleges that Plaintiff's deceased husband, James Greene, regularly purchased and used cigarettes manufactured by Defendants during his lifetime. The Complaint further alleges that Greene contracted and died of lung cancer caused by cigarette smoking. The complaint asserts three causes of action: negligence, strict liability and civil conspiracy.[2] The complaint presents several fac-

---

1. Plaintiff's response to this Motion states that: "as matters outside the pleadings have been raised by the Defendants, the Plaintiffs shall respond to the Motion in the manner provided by Rule, as a Motion for Summary Judgment pursuant to F.R.C.P. 56." Defendants' Motion, however, does not present matters outside the pleadings. Instead, Defendants merely argue that Plaintiff fails to state a claim upon which relief may be granted. Accordingly, the Court decides the Motion as a Motion to Dismiss under Rule 12(b)(6).

2. In Plaintiff's Response to Defendants' Motion to Dismiss, Plaintiff makes several references to Plaintiff's "fraud claims." In fact, Plaintiff does not plead a cause of action for fraud, but instead alleges fraud as an underlying tort in support of the civil conspiracy claim.

tual theories in support of each cause of action.

The lawsuit was removed to this Court on March 17, 1999 pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. Because this case is presented under diversity jurisdiction, the Court is required to apply the applicable state substantive law.[3] *See Hostetler v. Consol. Rail Corp.*, 123 F.3d 387, 390 (6th Cir. 1997).

To decide a 12(b)(6) motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [the] claims that would entitle [her] to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir.1996).

## II. THE TENNESSEE STATUTE OF REPOSE

■ Tennessee has adopted a "statute of repose" that applies to "[a]ny action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition...." Tenn.Code Ann. § 29–28–103 (Supp.1998). The statute of repose is a rule of substantive law that must be applied by a federal court sitting in diversity. *See Myers v. Hayes Int'l Corp.*, 701 F.Supp. 618, 622–25 (M.D.Tenn.1988).

■ The statute of repose was intended to decrease the number of product liability suits, thereby reducing litigation costs and the costs of product liability insurance. *See Bowman v. A–Best Co., Inc.*, 960

S.W.2d 594, 597 (Tenn.App.1997) (Susano, J. concurring) (citing the preamble to the enacting legislation, Chapter 703 of the Public Acts of 1978, effective July 1, 1978). To achieve this end, the statute of repose imposes an absolute time limit within which products liability claims must be filed.[4] An equitable "discovery rule" is not available to toll the statute of repose. *See Chrisman v. Hill Home Development*, 978 S.W.2d 535, 539 (Tenn.1998) (construing a similar four-year statute of repose applicable to actions for defective improvements to real estate); *Spence v. Miles Laboratories, Inc.*, 810 F.Supp. 952, 960 (E.D.Tenn. 1992) (construing § 29–28–103). By imposing an absolute time limitation upon the filing of product liability actions, the statute of repose sometimes has the effect of barring actions before they accrue—a result that has been upheld as permissible under both the United States and Tennessee Constitutions. *See Spence v. Miles*, 37 F.3d 1185, 1191 (6th Cir.1994).

■ By its plain terms, the statute of repose applies to Plaintiff's negligence and strict tort liability claims. The statute defines "product liability action" broadly to include:

> "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort; negligence;

**3.** The parties do not dispute that substantive issues in this case are governed by Tennessee law.

**4.** The statute provides:

"Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28–3–104, 28–3–105, 28–3–202 and 47–2–725, but notwithstanding any exceptions to these provisions it must be brought within six (6)

years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is shorter...."

Tenn.Code Ann. § 29–28–103 (Supp.1998). The parties agree in their respective legal memoranda on this motion that, if the statute of repose is applicable to Plaintiff's claims, then the ten year time period is the applicable time limitation.

breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever."

Tenn.Code Ann. § 29–28–102(6) (Supp. 1998). The reference to "any action" in § 29–28–103 has been interpreted broadly, and certainly encompasses Plaintiff's negligence and strict tort liability claims. *See, e.g., Electric Power Bd. of Chattanooga v. Westinghouse,* 716 F.Supp. 1069, 1073 (E.D.Tenn.1988). Thus, the statute of repose bars Plaintiff from recovering under negligence and strict tort liability for injuries caused by products sold prior to February 19, 1989—ten years prior to the filing of this lawsuit.

■ A more difficult issue is whether the statute of repose encompasses Plaintiff's civil conspiracy claim. Neither party cited a case on this point, and this Court is unaware of any Tennessee case resolving the issue. In such circumstances—where an unresolved question of state law is central to the disposition of a case properly before a federal court—the duty of the district court is to determine how the highest court of the state would rule if confronted with the issue, and apply the law in federal court as it would be applied in the State supreme court. *See Grantham and Mann v. American Safety Products,* 831 F.2d 596, 608 (6th Cir.1987).

■ It is well settled in Tennessee that the tort of civil conspiracy requires underlying wrongful conduct, and that conspiracy, standing alone, is not sufficient to support a cause of action:

It is a general rule that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action. *The damage done is the gist of the action, not the conspiracy.* When the mischief contemplated is accomplished, the conspiracy becomes im-

portant, as it may affect the means and measure of redress.... [B]ut the simple act of conspiracy does not furnish a substantive ground of action.

*Tennessee Pub. Co. v. Fitzhugh,* 165 Tenn. 1, 52 S.W.2d 157, 158 (1932) (emphasis added). If the underlying wrongful conduct is found to be not actionable then the conspiracy claim must also fail. *See Forrester v. Stockstill,* 869 S.W.2d 328, 330 (Tenn.1994); *Felts v. Paradise,* 178 Tenn. 421, 158 S.W.2d 727, 729 (1942) ("[i]t cannot be that a conspiracy to do a thing is actionable where the thing itself would not be.").

■ Under Tennessee law, the applicable limitations period is determined by the "gravamen of the action" rather than the formal legal designation given to the action by the parties. *See Spence,* 810 F.Supp. at 959. In this case, Plaintiff's specifically pleads fraud and related allegations as underlying torts.[5] These underlying claims form the gravamen of the civil conspiracy claim because, as a matter of Tennessee substantive law, the civil conspiracy claim cannot survive without the underlying claims. Like strict liability and negligence, "misrepresentation, concealment, [and] nondisclosure" are specifically enumerated as "product liability actions." Tenn.Code Ann. § 29–28–102(6). Given the broad statutory definition of "product liability action" and the interrelation between civil conspiracy and Plaintiff's underlying tort allegations, this Court HOLDS that Plaintiff's allegation of civil conspiracy is a "product liability action" within the meaning of § 29–28–102(6) and that the statute of repose from § 29–28–103 applies.

Plaintiff presents two arguments against application of the statute of repose in this case, but both arguments are lacking in merit. First, Plaintiff argues that Defendants' fraudulent concealment of material facts prevented Plaintiff from discovering the causes of action and filing this lawsuit. Plaintiff argues that it is contrary to the

5. See Part V, supra.

public policy of Tennessee to allow Defendants to profit from their own fraudulent concealment.

 Plaintiff's argument, although appealing on its face, is best directed toward the Tennessee legislature. Had the legislature intended to provide equitable exceptions to the statute of repose, it could have done so. Tennessee courts have consistently read all statutes of repose literally, and have declined to read equitable exceptions into them. *See Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn.1995) (statute of repose is an "absolute" limit "superimposed upon the existing statute [of limitations]" absent statutory exceptions); *Harrison v. Schrader*, 569 S.W.2d 822, 824 (Tenn.1978) (holding that statute of repose acts as "an outer limit or ceiling" within which all suits must be brought). This Court holds that the Tennessee Supreme Court would decline to create an equitable exception for fraudulent concealment to § 29–28–103.

 Plaintiff's second argument is that the statute of repose is a retroactive impairment of vested rights in contravention of the Tennessee Constitution. At least one Tennessee Court of Appeals has rejected this argument specifically. *See Bowman v. A–Best Co., Inc.*, 960 S.W.2d 594, 595–96 (Tenn.App.1997) (holding that the right of action does not vest until the injury is discovered, and thus § 29–28–103 does not impair vested rights when latent injuries are involved). The *Bowman* opinion is well reasoned and is consistent with well-settled Tennessee law. This Court HOLDS that the Tennessee Supreme Court would adopt the *Bowman* approach if confronted with the issue, and that § 29–28–103 does not impair vested rights under Tennessee law.

Accordingly, Plaintiff's negligence, strict liability and civil conspiracy claims are DISMISSED to the extent that these claims arise from cigarette sales prior to February 19, 1989—ten years prior to the filing of this lawsuit.

## III. FEDERAL PREEMPTION OF PLAINTIFF'S FAILURE TO WARN CLAIMS

Plaintiff's allegations of negligence, strict liability and civil conspiracy rely in part upon alleged duties by Defendants to disclose to consumers information about cigarette products.[6] Defendants argue that these common law claims, to the extent that they rely upon such a duty to disclose, are preempted by federal law—specifically, the Federal Cigarette Labeling and Advertising Act of 1969, as amended ("the Labeling Act"). *See* 15 U.S.C. § 1333, et seq. (Supp.1999).

The Labeling Act, as originally enacted in 1969, established a uniform warning to be placed on all cigarette packages. The uniform warning read: "Caution: Cigarette smoking is dangerous to your health." *See* 15 U.S.C. § 1333 (1969). In 1984, Congress amended the Labeling Act to create four uniform warnings that are to be rotated quarterly on cigarette packages. *See* 15 U.S.C. § 1333 (Supp.1999). The preemption provision of the Labeling Act, which has remained unchanged since its enactment in 1969, is of primary importance to this lawsuit. It reads:

> "No statement relating to smoking and health, other that the statement required by section 1333 of this title, shall be required on any cigarette package.... No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any ciga-

---

**6.** Paragraphs 19(A) –(E), (I) and (J) allege specific duties to warn and Paragraphs 20(A) –(E), (I) and (J) allege breach of the duty to warn as a basis for the negligence claim. Paragraphs 23(E), 23(F), 24(H) and 24(I) allege failure to warn as a basis for strict liability. Paragraphs 30(8), (11) and (19) allege failure to disclose information to the public in support of the civil conspiracy claim. Plaintiff's allegations in support of other theories of negligence, strict liability, and civil conspiracy are not affected by part III of this Order.

rettes the packages of which are labeled in conformity with the provisions of this chapter."

15 U.S.C. § 1334 (Supp.1999).

The Supreme Court's decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), is the controlling authority on the preemptive force of the Labelling Act. In *Cipollone*, the court held that the Labeling Act preempts not only inconsistent positive enactments of state law, but also common law actions for damages to the extent that such actions are inconsistent with the express language of the Labeling Act.[7] However, the court held that the Labeling Act does not preempt all common-law claims for cigarette liability. Instead, "[t]he central inquiry in each case is ... whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion,' giving that clause a fair but narrow reading." *Id.* at 523–24, 112 S.Ct. 2608.

In *Cipollone*, the court specifically held that the plaintiff's common law claims for negligence and strict liability for failure to warn were expressly preempted by the Labeling Act because these common law claims would have imposed upon cigarette manufacturers a duty to warn that was more stringent than federal law. *See id.* at 524–25, 112 S.Ct. 2608. In the case *sub judice*, Plaintiff's negligence and strict liability claims that are based upon a failure to warn, as enumerated in footnote six of this Order, are similar to the claims found preempted in *Cipollone*. Such claims, if allowed by this Court, would impose duties under state law inconsistent with the Labeling Act, and would destroy a stated policy of the Act—achieving uniformity of cigarette labeling. *See* 15 U.S.C. § 1331 (Supp.1999) (stating that one policy of the

act is to avoid "diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between health and smoking.")

Plaintiff attempts to distinguish her claims from those in *Cipollone* by arguing that her claims would not impose a duty with respect to "advertising or promotion." This argument is unpersuasive. Each of the strict liability and negligence allegations enumerated in footnote six would impose liability for failing to disclose information in addition to that required by the Labeling Act. For this reason, the claims are preempted. *See Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir.1996) (holding that all claims premised upon a failure to warn after 1969 are preempted).

■ Accordingly, Plaintiffs strict liability and negligence claims that are premised upon a duty to disclose information to consumers, and as enumerated in footnote six of this Order, are DISMISSED because they are preempted by federal law.

■ Plaintiff's civil conspiracy claim, however, presents a different issue. In *Cipollone*, the court found that the plaintiff's claim of "conspiracy to misrepresent or conceal material facts concerning the health hazards of smoking" was not preempted. *See id.* at 530, 112 S.Ct. 2608 ("The predicate duty underlying this claim is a duty not to conspire to commit fraud.... [T]his duty is not preempted."). Plaintiff alleges a similar claim of civil conspiracy in this case, and Defendant fails to demonstrate how the claim is materially different than the conspiracy claim found not preempted in *Cipollone*. Accordingly, this Court finds that Plaintiff's allegation of civil conspiracy is not preempted by the Labelling Act.

---

7. The court held that, because Congress had adopted an express preemption provision, the preemptive force of the Labelling Act is limited to its express language. *See Cipollone*, 505

U.S. at 516–517, 112 S.Ct. 2608. The court held that the doctrines of implied preemption and "field" preemption are not applicable under the Labeling Act. *See id.*

## IV. CONSUMER KNOWLEDGE OF HEALTH DANGERS FROM CIGARETTE SMOKING

Defendants ask the Court to take judicial notice of the fact that the health dangers of cigarette smoking were widely known to consumers at all times relevant to this lawsuit.[8] Defendants argue that Plaintiff cannot state a claim for relief under Tennessee products liability law for product dangers that were generally known to consumers.

### A. THE EXTENT OF CONSUMER KNOWLEDGE

In *Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230 (6th Cir.1988), the Sixth Circuit held it appropriate to take judicial notice of the fact that consumers, between 1974 and 1984, were generally aware of health risks posed by cigarette smoking. *See id.* at 236 (affirming the district court's decision to take judicial notice that "tobacco has been used for over 400 years and that its characteristics have also been fully explored. Knowledge that cigarette smoking is harmful to health is widespread and can be considered part of the common knowledge of the community.")

Judicial notice of generally known facts is appropriate when deciding a motion to dismiss for failure to state a claim. *See* Fed.R.Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding"); *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir.1998) (consideration of a motion to dismiss "is limited to facts stated on the face of the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken.").

■■■ This Court finds it appropriate to take judicial notice of the fact that, at all times relevant to this lawsuit, consumers were generally aware that cigarette smoking poses serious health risks.[9] The question remains, however, whether Plaintiff states a claim under Tennessee law given this judicially determined fact.

### B. TENNESSEE PRODUCTS LIABILITY LAW

Tenn.Code Ann. § 29–28–105 states:

"A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller."

Tenn.Code Ann. § 29–28–105 (Supp.1998). Proof that the product was either in a defective condition or unreasonably dangerous[10] is a prerequisite to all legal theories of product liability. *See* Tenn.Code Ann. §§ 29–28–105, 29–28–102(6) (defining "product liability action" broadly to include "any ... substantive legal theory in tort or contract whatsoever"). *See also, e.g., Masters v. Rishton*, 863 S.W.2d 702, 706 (Tenn.App.1992) (applying §§ 29–28–105 to negligence, strict liability and implied warranty claims). Thus, this threshold re-

---

**8.** The Court's holding in part I restricts the relevant time period to February 19, 1989 through February 19, 1999—the ten year period preceding the filing of this lawsuit.

**9.** It is unnecessary for the Court to determine the precise health hazards of which consumers were generally aware. The mere fact that consumers knew that cigarettes posed serious health dangers is enough to defeat Plaintiff's claim under the consumer expectation test. *See* Part IV(B)(1), infra. Likewise, regardless of which health dangers were known by consumers, this knowledge is insufficient to defeat Plaintiff's claim under the prudent manufacturer test. *See* Part IV(B)(2), infra.

**10.** "Defective condition" is defined as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn.Code Ann. § 29–28–102(2). "Unreasonably dangerous" is defined to mean "that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerousness."

quirement attaches to Plaintiff's negligence, strict liability and civil conspiracy claims.

Interpreting § 29–28–105, the Tennessee Supreme Court has held that the statute incorporates two independent theories of products liability: the "consumer expectation test" and the "prudent manufacturer test." *See Ray by Holman v. BIC Corporation,* 925 S.W.2d 527, 531 (Tenn.1996) ("The straight-forward, unambiguous language of our statute establishes two distinct tests for ascertaining whether a product is unreasonably dangerous: the consumer expectation test and the prudent manufacturer test."). Thus, to meet the statute's threshold requirement, a plaintiff may show "either ... that the product was dangerous beyond that contemplated by an ordinary consumer (the consumer expectation test) or by establishing that a reasonably prudent manufacturer, assumed to know the product's dangerous condition, would not have marketed the product (prudent manufacturer test employing risk-benefit analysis)." *Id.* at 533.

Plaintiff relies upon both the consumer expectation test and the prudent manufacturer test to allege strict liability, negligence, and civil conspiracy claims. The adequacy of Plaintiff's allegations under each test, in light of the judicial determination that consumers were aware of health risks posed by cigarette smoking, is discussed in turn below.

**1. THE CONSUMER EXPECTATION TEST**

█ Under the consumer expectation test, a product is deemed unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *See Ray by Holman,* 925 S.W.2d at 530 (quoting Restatement (Second) of Torts ("the Restatement")). "Under this test, a product is not unreasonably dangerous if the ordinary consumer would appreciate the condition of the product and the risk of injury." *Id.*

The comments to the Restatement specifically address whether tobacco is unreasonably dangerous under the consumer expectation test. It states: "Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous." Restatement (Second) of Torts § 402(a), comment (i) (1965).

The Restatement approach is consistent with the Sixth Circuit's approach in *Roysdon.* Based on the court's judicial notice of consumers' knowledge, the Sixth Circuit found that the district court's directed verdict for the defendant on the issue of product defect was appropriate. *See id.* ("The extensive information regarding the risks of smoking available to the public during the that time [1974–1984] precluded the existence of a jury question as to whether cigarettes are unreasonably dangerous. We find that whether there was knowledge regarding [the plaintiff's] specific medical problem is irrelevant in light of the serious nature of the other diseases known at that time to be caused by cigarette smoking.")

█ Although Plaintiff, in the Original Complaint, makes detailed allegations as to what Defendants knew as to the health effects of cigarettes, Plaintiff merely makes broad, conclusory allegations as to the knowledge of ordinary consumers. In Paragraph 10 of the Complaint, Plaintiff alleges: "At all times material, the ordinary consumer, including the Plaintiff, did not in the exercise of ordinary diligence know of the likelihood of, the severity of, or the risks from the defendants' cigarette products, which risks are outlined above."

This allegation is insufficient to overcome the judicial notice previously taken by the Court in Part IV(A), *supra.* To state a claim under the consumer expectation test, Plaintiff must allege that Defendants' cigarettes were more dangerous than the health hazards commonly associated with cigarette smoking by consumers. For example, Plaintiff might allege that the tobacco in Defendants' cigarettes was

**892**

"bad" tobacco, in the sense that it contained harmful additives or other ingredients unexpected to consumers in "good" tobacco.[11] Plaintiff, however, has not made such allegations.

Other than incorporating Paragraph 10 by reference, Plaintiff's allegations of negligence and civil conspiracy make no allegations regarding consumers' knowledge or expectations. Accordingly, the Court HOLDS that Plaintiff fails to state a claim for negligence or civil conspiracy under the consumer expectation test.

In addition to incorporating paragraph 10 by reference, Plaintiff's allegation of strict liability states in paragraph 23(c): "the cigarette products failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the Plaintiff."

This broad and conclusory allegation is insufficient to sustain a strict liability claim under the consumer expectation test. To satisfy the requirements of notice pleading, Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2). "Although [the] standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Advocacy Organization For Patients and Providers v. Auto Club Insurance Association*, 176 F.3d 315, 319 (6th Cir.1999). In reviewing a motion to dismiss, this Court should consider "[a]ll well-pleaded facts, as distinguished from conclusory allegations...." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir.1995). Paragraph 23(C) is merely conclusory, does little more than track the statutory language, and does not provide adequate notice to

Defendants of the facts underlying Plaintiff's consumer expectation allegations.

In paragraph 24, Plaintiff also alleges ten specific ways in which Defendants' cigarette products were defective in design. However, Plaintiff fails to allege that these particular design defects deviated from the specific expectations of consumers. In this way, paragraph 24 also fails to sufficiently allege the consumer expectation element of a strict liability claim.

In light of the Court's judicial notice regarding consumers' knowledge, and given Plaintiff's conclusory allegations on this point, the Court HOLDS that Plaintiff failed to state a claim for strict liability under the consumer expectation test.

## 2. THE PRUDENT MANUFACTURER TEST

In *Roysdon*, both the district court and the Sixth Circuit assumed that the consumer expectation test was the only method by which a plaintiff could meet the threshold requirements of § 29–28–105. *See Roysdon*, 849 F.2d at 237 (citing *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690 (Tenn.1984)). Since that time, however, the Tennessee Supreme Court has clarified the law, and has made it clear that the prudent manufacturer standard is an alternate, independent method by which plaintiffs may meet the threshold showing of unreasonable dangerousness under § 29–28–105. *See Ray by Holman*, 925 S.W.2d at 533 ("Our statute clearly authorizes plaintiff to attempt to establish the unreasonable dangerousness of a product by employing a prudent manufacturer test which includes a risk-utility balancing approach."). "[T]he prudent manufacturer test imputes knowledge of the condition of the product to the manufacturer. The test is whether, given that

11. In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff states: "The Plaintiff can also demonstrate that the Defendants' products contain dangerous impurities and that they are improperly manufactured." In support, Plaintiff asks the Court to consider affidavit evidence attached to the Response. Because this is a Motion to Dismiss on the pleadings, the Court declines to consider evidence outside the pleadings. Should Plaintiff desire to assert a cause of action based upon added ingredients or impurities, then Plaintiff should amend the Complaint to allege these facts.

knowledge, a prudent manufacturer would market the product." *Id.* at 530.

 Defendant asks the Court to dismiss Plaintiff's claims on the grounds that consumers' knowledge of health hazards from smoking is a complete bar to Plaintiff's recovery. Under the prudent manufacturer test, however, consumers' knowledge of the product's dangers is not a complete bar. "[T]he prudent manufacturer test requires proof about the reasonableness of the manufacturer or seller's decision to market a product assuming knowledge of its dangerous condition. *What the buyer expects is irrelevant under this test.*" *Id.* at 531 (emphasis added).[12] Thus, to state a claim under the prudent manufacturer test, Plaintiff need not specifically plead that the product was more dangerous than consumers expected.

 In this case, Plaintiff makes sufficient allegations to sustain the negligence, strict liability and conspiracy claims under the prudent manufacturer test. Paragraphs 8, 9 and 11 make detailed allegations as to the health hazards from cigarette smoking. These allegations are incorporated by reference into each of Plaintiff's substantive claim allegations. Under the prudent manufacturer test, such knowledge is imputed to the manufacturer, and the jury is asked to decide whether a prudent manufacturer, knowing of these health hazards, would have marketed the product. The Court HOLDS that Plaintiff's allegations are sufficient to satisfy the requirements of the prudent manufacturer test.

## V. CIVIL CONSPIRACY

 Defendant's final argument is that Plaintiff's civil conspiracy claim must fail because she has failed to plead an underlying tort. Defendant is correct that conspiracy requires underlying wrongful conduct and that, standing alone, conspiracy cannot sustain a cause of action.[13]

In this case, Plaintiff makes detailed allegations of fraud in support of the conspiracy claim. For example, paragraph 30 of the Complaint contains 19 subparts alleging specific acts of fraud, misrepresentation, suppression of research, etc. These allegations are sufficient to meet the "particularity" requirement of Rule 9(b). Plaintiff has sufficiently plead a claim for civil conspiracy.

## V. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

---

12. At a subsequent point in the opinion, the Tennessee Supreme Court cites the "Wade-Keeton" approach to the prudent manufacturer test, and lists seven factors relevant to administering the prudent manufacturer test. *See Ray by Holman*, 925 S.W.2d at 533 n. 10. One of those factors is "The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions." *Id.* The Wade–Keeton approach, however, is a balancing test that weighs all factors involved. Under this approach, consumer knowledge of the product's dangers would merely be one factor to balance in the overall equation rather than a complete bar to Plaintiff's recovery.

13. See Part II, page 887.