Mounce A. JACKSON

v.

GENERAL MOTORS CORPORATION.

Supreme Court of Tennessee,
at Nashville.

Nov. 29, 2001.

Charles J. Williams and John B. Carlson, Nashville, TN, for the petitioner, Mounce A. Jackson.

Leo Bearman, Jr., Memphis, TN, Lanny B. Bridgers, and W. Randall Bassett, Atlanta, Georgia, for the respondent General Motors Corporation.

Charles B. Lewis, Linda J. Hamilton Mowles, Knoxville, TN, for Amicus Curiae, Product Liability Advisory Council.

Dianne Elizabeth Lashmit, Knoxville, TN, for Amicus Curiae, Tennessee Trial Lawyers Association.

## OPINION

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, WILLIAM M. BARKER, JJ., joined.

Pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee,[1] this Court accepted certification of the following question from the United States Court of Appeals for the Sixth Circuit:

> In a products liability action under Tennessee law, may the plaintiff use the "consumer expectation test" to prove that his seatbelt/restraint system was unreasonably dangerous because it failed to conform to the safety standards expected by an ordinary consumer under the circumstances?

We conclude that the consumer expectation test as defined by Tenn.Code Ann. § 29–28–102(8) is applicable to any products liability claim where the plaintiff intends to show that a manufacturer is liable for plaintiff's injuries as a result of an unreasonably dangerous product.

## I. Factual and Procedural Background

On August 21, 1992, plaintiff Mounce A. Jackson was driving eastward on Interstate 40 in Putnam County, Tennessee, in his 1992 Pontiac Grand Prix automobile, manufactured by defendant General Motors Corporation ("GM"). The plaintiff lost control of the vehicle on wet pavement, resulting in the vehicle traveling across the median, through the westbound lanes, across a ditch, and up a bank. The front of the vehicle crashed into a tree, whereupon the plaintiff was injured when his jaw hit the steering wheel of the car. The plaintiff was wearing his seatbelt at the time of the accident, and plaintiff asserts that the driver's seat was positioned as far away from the steering wheel as the adjustable seat track would allow. The estimated speed of the vehicle at the time of the crash was 19–23 miles per hour. The plaintiff received multiple fractures to the face as a result of the crash and consequently developed Temporomandibular Joint Dysfunction (TMJ).

Jackson commenced a products liability action against GM on April 4, 1997, in the United States District Court for the Middle District of Tennessee, asserting that the Pontiac's seatbelt was unreasonably dangerous. On September 11, 1998, plaintiff filed a pleading which limited his claim against GM to strict products liability based on the consumer expectation test provided in the Tennessee Products Liability Act of 1978, codified at Tenn.Code Ann. §§ 29–28–101 to –108. On February 8, 1999, GM filed a motion for summary judgment which was subsequently denied by the district court in a memorandum decision on the grounds "that a seat belt system is a commonplace product about which an ordinary consumer would have both

---

1. "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." *Tenn. Sup.Ct. R.* 23 § 1.

knowledge and minimum safety expectations based on everyday experience." After reviewing the defendant's motion for reconsideration, the district court issued a second memorandum decision granting the defendant's motion for summary judgment based upon a finding that the ordinary consumer had no basis upon which to form an expectation of the safety provided by seat belts in similar automobile accidents.

Jackson appealed, and the United States Court of Appeals for the Sixth Circuit certified the following question of law to this Court:

> In a products liability action under Tennessee law, may the plaintiff use the "consumer expectation test" to prove that his seatbelt/restraint system was unreasonably dangerous because it failed to conform to the safety standards expected by an ordinary consumer under the circumstances?

We accepted certification of this question, and, for the following reasons, conclude that the consumer expectation test may be employed in any products liability action under Tennessee law whereupon the plaintiff seeks to recover on the basis that the product is unreasonably dangerous.

## II. Analysis

To answer this certified question of law, we must construe the Tennessee Products Liability Act of 1978. *See* Tenn.Code Ann. §§ 29–28–101 to –108. Section 29–18–105 of the statute provides:

> (a) A manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

\* \* \*

> (d) A product is not unreasonably dangerous because of a failure to adequately warn of a danger or hazard that is apparent to the ordinary user.

"Unreasonably dangerous" is defined in section 29–28–102(8) as

> dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

We previously considered this statute and the consumer expectation test in *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527 (Tenn.1996). In *BIC*, this Court, answering a Rule 23 certified question of law from the Sixth Circuit, examined the Tennessee Products Liability Act of 1978 to determine whether, in addition to the consumer expectation test, section 29–28–102(8) provided for a "risk-utility" test. We held that the statute provided for two tests: the consumer expectation test and the prudent manufacturer test (which involves risk-utility balancing). The plaintiff in *BIC* asserted that a disposable cigarette lighter was unreasonably dangerous on the basis of the prudent manufacturer test. In resolving this issue, the Court examined both tests under the definition of unreasonably dangerous, and concluded that "[o]ur statute does not limit the application of either test to only certain types of actions. Nonetheless, the consumer expectation test will be inapplicable, by definition, to certain products about which an ordinary consumer can have no expectation." 925 S.W.2d at 533.

■ The defendant contends that seat belts are complex products about which the ordinary consumer cannot possibly formulate expectations regarding their safety and performance in automobile crashes. Defendant suggests that Tennessee's prudent manufacturer test is the appropriate test to be applied when the product at issue is complex beyond the knowledge of the ordinary consumer. As support for this argument, the defendant points to other language in *BIC* stating that the consumer expectation test is ill-suited for application to complex products:

> For example, ordinary consumers would have a basis for expectations about the safety of a can opener or coffee pot, but, perhaps, not about the safety of a fuel-injection engine or an air bag.... While the statute does not limit applicability of the tests, the prudent manufacturer test will often be the only appropriate means for establishing the unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation.

925 S.W.2d at 531.

■ The cardinal rule of statutory construction is to follow the plain meaning of the statute where the language is clear and unambiguous on its face. "Legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 431 (Tenn.Ct.App.1994)(citing *Nat'l Gas Dist., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn.1991)). Section 29–28–102(8) of Tennessee Code Annotated is silent as to any limitation on the application of the consumer expectation test in products liability cases. Absent contrary indication in the statute, we read Tennessee products liability law to permit application of the consumer expectation test in all products liability cases in which a party intends to establish that a product is unreasonably dangerous. It does not follow that, because the consumer expectation test may be applied in all such product liability cases, the manufacturer will be subject to absolute liability. Whether a plaintiff is successful on a products liability claim under the consumer expectation test will depend on whether the trier of fact agrees that the plaintiff's expectation of product performance constituted the reasonable expectation of the ordinary consumer having ordinary knowledge of the product's characteristics.

We are unwilling to accept the defendant's argument that ordinary consumers cannot form expectations about the safety and performance of seat belts. The language in *BIC* upon which the defendant relies merely explains that it may be difficult for a plaintiff to establish that the product is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics," if the community has no ordinary knowledge about the product's characteristics. *See* Tenn.Code Ann. § 29–28–102(8). Our intent in *BIC* was not to limit the application of either test, but to hold that, in order to be successful under the consumer expectation test, the plaintiff must present evidence that the ordinary consumer has an expectation regarding the safety of the product. "What is determinative is what an ordinary purchaser would have expected." 925 S.W.2d at 531. The opinion in *BIC* clearly states that either the consumer expectation test or the prudent manufacturer test, or both, may be applied in all cases where the product is alleged to be unreasonably dangerous.

Our conclusion in this regard is supported by the case of *General Motors v. Farnsworth*, 965 P.2d 1209 (Alaska 1998), cited by plaintiff to support his contention that the consumer expectation test may be applied to a products liability case involving a seat belt. The plaintiff in *Farnsworth* was a passenger in an automobile accident, and was severely injured when she "submarined" below the lap belt of the seat belt restraining system. The court held that "[w]hen a seat belt designed to be an instrument of protection, becomes an instrument of life-threatening injury, a consumer is justified in concluding that it did not perform as safely as promised. A seat belt is a familiar product whose basic function is well understood by the general population." 965 P.2d at 1221. In support of its adoption of the consumer expectation test, the *Farnsworth* court stated that the consumer expectation test "incorporates notions of the implied warranty of fitness for reasonable use, a primary concept in the evolution of strict products liability." *Id.* (quotation marks and citation omitted).

Our conclusion is also supported by *Soule v. General Motors Corp.*, 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994), relied upon by both parties in this case. In *Soule,* the Supreme Court of California held that the trial court improperly gave the jury an instruction on the consumer expectation test in a product liability case involving technical analysis of an automobile collision. In so holding, the *Soule* court held:

[A] complex product, even when it is being used as intended, may often cause injury in a way that does not engage its ordinary consumers' reasonable minimum assumptions about safe performance. For example, the ordinary consumer of an automobile simply has "no idea" how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards.

34 Cal.Rptr.2d 607, 882 P.2d at 308. The *Soule* court rejected GM's argument, however, that the consumer expectations test was necessarily unworkable when " 'crashworthiness,' a complex product, or technical questions of causation are at issue," stating:

We fully understand the dangers of improper use of the consumer expectations test. However, we cannot accept GM's insinuation that ordinary consumers lack any legitimate expectations about the minimum safety of the products they use. In particular circumstances, a product's design may perform so unsafely that the defect is apparent to the common reason, experience, and understanding of its ordinary consumers. In such cases, a lay jury is competent to make that determination.

*Id.* at 309–10.

■■ The ability to go forward on a claim that a product is unreasonably dangerous based on the consumer expectation test requires that the plaintiff provide sufficient evidence to create a question of fact that the product was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *See* Tenn.Code Ann. § 29–28–102(8). Once this question of fact is established, however, "[t]he general rule in Tennessee is that the issue of whether a product is defective or unreasonably dangerous is one for the jury," *Curtis v. Universal Match Corp., Inc.,* 778 F.Supp. 1421, 1427 (E.D.Tenn.1991). Under the consumer expectation test, "a plaintiff is required to produce evidence of the objective conditions of the product as to which the jury is to employ its own sense of whether the product meets ordinary expectations as to its safety under the circumstances present-

ed by the evidence." *Arnold v. Dow Chemical Co.*, 91 Cal.App.4th 698, 110 Cal. Rptr.2d 722, 737 (2001).

The issue of whether the consumer expectation test applies to seat belts was addressed in *Cunningham v. Mitsubishi Motors Corp.*, No. C–3–88–582, 1993 WL 1367436, at * 1 (S.D.Ohio June 16, 1993). In *Cunningham,* the United States District Court for the Southern District of Ohio, Western Division, held that the consumer expectation test was applicable in a wrongful death/products liability action where the seatbelt was determined to have killed the driver in a twenty-to-thirty miles per hour automobile crash. In its decision, the *Cunningham* court held:

> [S]eat belts generally are familiar products for which consumers' expectations of safety have had an opportunity to develop, and the function which they were designed to perform is well known. In recent years, consumers have been bombarded with information regarding the importance of wearing seat belts because of the protection which they provide.

\* \* \*

■ [T]his Court is simply not willing to … preclud[e] the use of the consumer expectation test in a situation involving a familiar consumer product which is technically complex or uses a new process to accomplish a familiar function. Many familiar consumer products involve complex technology. In addition, manufacturers are constantly altering the methods in which products perform familiar functions. Thus, to conclude that the consumer expectation test cannot be used because a product is technologically ·complex or because a new process is used to achieve a familiar result would be to significantly reduce the use of that test. . . . Because of their long usage and

consumer familiarity with the measure of safety which seat belts provide, consumer expectations do provide useful guidance.

*Id.* at * 3–4. The above statement in the *Cunningham* decision is significant because it recognizes that the consumer expectation test does not depend necessarily on a product's complexity in technology or use. Instead, *Cunningham* recognizes that successful application of the consumer expectation test by a plaintiff simply requires a showing that the product's performance was below reasonable minimum safety expectations of the ordinary consumer having ordinary, "common" knowledge as to its characteristics. This entails a showing by the plaintiff that prolonged use, knowledge, or familiarity of the product's performance by consumers is sufficient to allow consumers to form reasonable expectations of the product's safety.

### *III. Conclusion*

■ In response to the certified question, we conclude that the consumer expectation test is applicable to any products liability case in which a party seeks to establish that a product is unreasonably dangerous under Tennessee law. We affirm our decision in *Ray ex rel Holman v. BIC Corp.* that the consumer expectation test and the prudent manufacturer test are not exclusive of one another and therefore either or both of these tests are applicable to cases where the product is alleged to be unreasonably dangerous. However, we recognize here, as we did in *BIC,* that it may be difficult for plaintiffs in cases involving highly complex products to establish that the product is dangerous to an extent beyond that which would be contemplated by an ordinary consumer, even though the consumer expectation test may, technically, apply.

Having answered the certified question, the Clerk is directed to transmit a copy of this opinion in accordance with Tennessee Supreme Court Rule 23(8). Costs in this Court are taxed to the respondent, General Motors Corporation.