Edward BROWN, Plaintiff,

v.

**THE RAYMOND CORPORATION, Defendant.**

No. 02–2771 MA.

United States District Court,
W.D. Tennessee,
Western Division.

May 4, 2004.

Michael W. Whitaker, Whitaker Law Firm, Covington, TN, for Edward Brown.

Larry Killebrew, Butler Snow O'Mara Stevens & Cannada, PLLC, Memphis, TN, Francis H. LoCoco, Quarles & Brady, Milwaukee, WI, for Raymond Corp.

Deana C. Seymour, Rainey Kizer Butler Reviere & Bell, Jackson, TN, Lee R. Sparks, Rainey Kizer Reviere & Bell, Jackson, TN, for Quebcor World–Covington.

## ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERTS AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MAYS, District Judge.

This diversity case involves a products liability claim arising under Tennessee law. Before the court are two pending motions. On February 17, 2004, Defendant filed a motion to strike Plaintiff's experts. Plaintiff filed a response on March 8, 2004. Defendant also filed a motion for partial summary judgment on February 17, 2004.[1] Plaintiff filed a response on March 8, 2004. For the following reasons, both motions are GRANTED.

### I. Jurisdiction

Plaintiff Edward Brown is a resident of Henning, Tennessee. (Am. Compl. at 1.) Defendant The Raymond Corporation ("Raymond") is a non-Tennessee corporation with its principal place of business in Greene, New York. (*Id.*) Plaintiff seeks in excess of $75,000. (*Id.*) The court, therefore, has jurisdiction under 28 U.S.C. § 1332.

### II. Background

The following facts are undisputed unless otherwise noted. Brown was employed by Quebecor, Inc., in Convington, Tennessee, as a material handler. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts at ¶ 1.) In the course of that employment, Brown operated a Raymond Easi Reach stand-up narrow aisle forklift ("forklift"). (*Id.* at ¶ 2.) On October 16, 2001, Brown's forklift collided with a forklift operated by Charles Gause at an intersection. (*Id.* at ¶¶ 1–2, 8.) Both Brown and Gause were experienced forklift operators who had been trained in the proper operation of forklifts and had read the accompanying operating manual. (*Id.* at ¶ 7.) The manual states: "Stop and sound horn when approaching cross aisles, when exiting an aisle, or when visibility is obstructed." (*Id.* at 3–4; Pl.'s Mot. for Summ. J. at Ex. 8.) As a result of the collision, Brown suffered injuries to his left foot. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts at ¶ 3.) Brown contends that his injuries resulted because the bumper of Gause's forklift entered into the operator compartment of Brown's forklift. He brings claims under the Tennessee Products Liability Act ("TPLA"), Tennessee Code Annotated § 29–28–101 *et seq.*, alleging that Raymond is liable for his injuries because of its failure to provide adequate warnings, because of the forklift's defective design, and because the brakes were not working properly. Raymond seeks summary judgment on only the first two grounds, failure to provide adequate warning and defective design.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

1. The motion is labeled as one for "summary judgment" rather than "partial summary judgment." However, a ruling in Defendant's favor on this motion does not dispose of all issues in this case.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## IV. Tennessee Products Liability Law

### A. Standard

Where a product is in a "defective condition or unreasonably dangerous at the time it left the control of the manufacturer," the manufacturer may be held liable under the TPLA. T.C.A. § 29–28–105(a). The TPLA defines "unreasonably dangerous" to mean:

> that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer ..., assuming that the manufacturer ... knew of its dangerous condition.

T.C.A. § 29–28–102(8). The Tennessee Supreme Court has held that this definition contemplates both a "consumer expectation test" and a "prudent manufacturer test." *Ray v. BIC Corp.,* 925 S.W.2d 527, 530–31 (Tenn.1996).

The consumer expectation test can be defined generally as "whether the product's condition poses a danger beyond that expected by an ordinary consumer with reasonable knowledge." *Id.* at 529. If the ordinary consumer would appreciate the risk of injury posed by the product, the product is not unreasonably dangerous. *Id.* at 530. The consumer expectation test is buyer-oriented and requires the plaintiff "to establish what an ordinary consumer purchasing the product would expect." *Id.* at 531. "Obviously, this test can only be applied to products about which an ordinary consumer would have knowledge. By definition, it could be applied only to those products in which *everyday experience* of the product's users permits a conclusion." *Id.* (internal quotation marks and citation omitted). "For example, ordinary consumers would have a basis for expectations about the safety of a can opener or coffee pot, but, perhaps, not about the safety of a fuel-injection engine or an air bag." *Id.*

Where ordinary consumers lack a basis for expectations about the safety of a product, the consumer expectation test will be inapplicable. *Id.*

The prudent manufacturer test, by contrast, is manufacturer oriented. It "imputes knowledge of the [potentially dangerous] condition of the product to the manufacturer." *Id.* at 530. The test is whether a prudent manufacturer, knowing of the potential for harm, would market the product despite the known risks. *Id.* "[T]he prudent manufacturer test requires proof about the reasonableness of the manufacturer['s] ... decision to market a product assuming knowledge of its dangerous condition." *Id.* at 531. Expert testimony is essential for establishing a claim under the prudent manufacturer test because a lay jury could not evaluate a manufacturer's prudence absent expert testimony. *Id.* A risk utility analysis also is required as part of the prudent manufacturer test. *Id.* at 532. Among other factors, a prudent manufacturer would consider:

(1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

(2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

(3) The availability of a substitute product which would meet the same need and not be as unsafe.

(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

(5) The user's ability to avoid danger by the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

(7) The feasability, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Id.* at 533 n. 10.

The consumer expectation test and the prudent manufacturer test are "neither mutually exclusive nor mutually inclusive." *Id.* at 531. In *Jackson v. General Motors Corporation,* the Tennessee Supreme Court held that the consumer expectation test "is applicable to any products liability claim where the plaintiff intends to show that a manufacturer is liable for plaintiff's injuries as a result of an unreasonably dangerous product." 60 S.W.3d 800, 802 (Tenn.2001). The court, however, also noted that it would be difficult to establish the necessary elements under the consumer expectation test where "the community has no ordinary knowledge about the product's characteristics." *Id.* at 804. "[T]o be successful under the consumer expectation test, the plaintiff must present evidence that the ordinary consumer has an expectation regarding the safety of the product." *Id.* "[T]he prudent manufacturer test will often be the only appropriate means for establishing the unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation." *Ray,* 925 S.W.2d at 531. Where complex products about which ordinary consumers have no expectations are involved, courts interpreting Tennessee law have continued to require the presentation of expert evidence since *Jackson* was decided. *See Coffey v. Dowley Mfg., Inc.,* 187 F.Supp.2d 958, 971, 979 (M.D.Tenn.2002) (granting summary judgment after finding that plaintiff's witness did not qualify as an expert and that the

product was a complex machine about which consumers have no basis for an expectation as to safety), *aff'd* 89 Fed.Appx. 927, 2003 U.S.App. LEXIS 26610 (6th Cir. Dec. 18, 2003); *Brown v. Crown Equip. Corp.*, 2004 WL 350658, at *1–2, *6–7 (Tenn.Ct.App. Feb.25, 2004) (affirming grant of defendant's motion for directed verdict where plaintiff's witnesses did not qualify as experts and the facts at issue were beyond the common understanding of lay jurors).

### B. Analysis

██ Plaintiff argues that the court should apply the consumer expectation test. Plaintiff argues that forklifts are not complex machines and that consumers have a reasonable expectation as to the safety of forklifts. The only Tennessee courts to have addressed this issue have held otherwise. In *Brown*, the plaintiff had filed suit against Crown Equipment Corporation ("Crown") arguing that Crown's forklifts were defective. 2004 WL 350658 at *1. After determining that the plaintiff's proposed expert witnesses should not be qualified as experts, the trial court granted a directed verdict to the defendant, holding that expert testimony was required under the circumstances. *Id.* The Tennessee Court of Appeals affirmed, stating that the fact at issue regarding forklifts was only within the common knowledge of experts. *Id.* at *6–7. The Tennessee Supreme Court would be likely to agree with the Tennessee Court of Appeals. As Plaintiff himself notes, the forklifts at issue are used in industrial settings. (Pl.'s Response to Def.'s Daubert Mot. at 5.) Forklifts are complex machines, and ordinary consumers have no reasonable expectations regarding their safety.

██ Although the *Jackson* court held that the consumer expectation test is theoretically applicable to all product liability cases under Tennessee law, it also affirmed the *Ray* court's holding that the consumer expectation test may be inadequate where complex products unfamiliar to the ordinary consumer are at issue. *Jackson*, 60 S.W.3d at 805; *see Coffey*, 187 F.Supp.2d at 969. "In those situations, the prudent manufacturer test is the sole useful test for assessing a defective or unreasonably dangerous condition." *Coffey*, 187 F.Supp.2d at 969. Forklifts are complex products not familiar to ordinary consumers. The prudent manufacturer test applies, and the consumer expectation test is of no use.

██ Plaintiff, however, contends that T.C.A. § 29–28–102(8) requires that, for the prudent manufacturer test to apply, the manufacturer must know of the potentially dangerous condition and must have conducted a risk-utility analysis before marketing the product. Because various individuals associated with Raymond have offered deposition testimony that they did not have knowledge before this accident that the bumper of one forklift could enter into the operator compartment of another forklift, Plaintiff contends that the prudent manufacturer test does not apply to this case. This contention is at odds with Tennessee law. Plaintiff argues that the phrase "would not be put on the market by a reasonably prudent manufacturer ... assuming that [the manufacturer] knew of its dangerous condition" in T.C.A. § 29–28–102(8) requires that the manufacturer have actual knowledge of the dangerous condition before making the decision to go forward with putting the product on the market. The Tennessee Supreme Court has explicitly stated, however, that the prudent manufacturer test *"imputes* knowledge of the condition of the product to the manufacturer." *Ray*, 925 S.W.2d at 530 (emphasis added). The reasonable manufacturer is presumed to be "omnis-

cient" under the test. *Id.* at 531. Therefore, the manufacturer's actual knowledge of the condition prior to shipping or suit is irrelevant. The prudent manufacturer test can be applied to this case.

The prudent manufacturer test is the only useful test given that forklifts are complex industrial machines about which ordinary consumers have no expectations. Plaintiff must therefore provide expert testimony to withstand Defendant's motion for summary judgment. *Coffey*, 187 F.Supp.2d at 969. Because the court determines that Plaintiff's expert testimony should be excluded, summary judgment is appropriate.

## V. Exclusion of Plaintiff's Experts

### A. Standard

The propriety of testimony by experts is set forth in Federal Rule of Evidence 702. Rule 702 provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as and expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court established guidelines to assist district courts in determining when expert testimony should be admitted. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under *Daubert,* district courts function as gatekeepers " 'to determine whether the principles and methodology underlying the testimony itself are valid'—not to second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." *Pride v. BIC Corp.,* 218 F.3d 566, 577 (6th Cir.2000) (quoting *United States v. Bonds,* 12 F.3d 540, 556 (6th Cir.1993)). A district court should consider whether the expert's hypotheses can be or have

been tested, whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community. *See Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786. A witness is not an expert simply because he claims to be. *Pride,* 218 F.3d at 577.

### B. Plaintiff's Experts

Plaintiff offers two expert witnesses, Dr. Michael L. Romansky and Mr. James R. Driver. Plaintiff maintains that his experts focused on the objective features of the forklifts. This focus assumed that the consumer expectation test applied. Neither expert did a full risk analysis. However, Plaintiff also claims that both experts point out alternative designs and Defendant's failure to provide adequate warnings. Because these are factors in the risk utility analysis, the court will consider whether Plaintiff's expert submissions are sufficient to avoid summary judgment.

### i. Michael L. Romansky

Romansky holds a Bachelor of Science in Industrial Engineering, a Master of Science in Industrial Engineering, and a Doctorate in Engineering, all from West Virginia University. (Def.'s Mot. for Summ. J. at Ex. 4.) He also holds a law degree from Duquesne University. (*Id.*) He is a member of various professional organizations and has previously been qualified as an expert witness in such areas as forensic human factors engineering, ergonomics, and workplace and non-workplace accident reconstruction. (*Id.*)

Romansky's testimony would not assist the trier of fact in this case. Romansky addresses two issues: whether the forklift was defectively designed and whether Raymond failed to adequately warn users of the forklift's dangers. As to defective design, Romansky testified in his deposi-

tion that he identified the potential for the wheel well of one forklift to intrude into the operator compartment of another forklift. (*Id.* at Ex. 6.) He testified that Raymond should have "eliminated the hazard." (*Id.*) Romansky has never designed a forklift. (*Id.*) When questioned as to safer alternative designs, Romansky stated "[t]hat's up to the design engineer." Romansky admitted that he is not an expert in the design of forklifts and stated that his role as an expert is to identify problems that others need to address. (*Id.*) He was unwilling to state that, had Raymond done a human factors task analysis, the accident that occurred could have been prevented or guarded against. (*Id.*) This reluctance is understandable because the design of industrial equipment is a complex process and changes to prevent one problem could create other problems, thus increasing the overall danger of using a product. (*Id.*) An actual design is necessary before the effects of the proposed changes can be determined.

■ The existence of a better, safer or different design that would have averted the injury is not dispositive under Tennessee law. *See Curtis v. Universal Match Corp.,* 778 F.Supp. 1421, 1430 (E.D.Tenn. 1991). The relevant question is always whether the actual product designed and produced is unreasonably dangerous. *See Taylor v. Square D Co.,* 2003 WL 23093835, at *7 (Tenn.Ct.App. April 7, 2003). Romansky opines that the forklifts in question are unreasonably dangerous. He must have some basis for that opinion, however. It is clear from his deposition that the basis for his opinion is Raymond's failure to consider alternative designs that could have averted Brown's injury. That is an insufficient basis for two reasons. First, the fact that a safer design might have been possible does not make the current design unreasonably dangerous. Second, even assuming that Raymond could be held liable for failure to recognize the existence of a superior alternative design, Romansky offers no alternative design and admits that he is not qualified to offer such a design. His criticism of Raymond is that it failed to identify a potential safety issue and to consider whether the hazard could be eliminated. This fact situation is similar to that in *Dancy v. Hyster Company,* 127 F.3d 649 (8th Cir.1997). There, the plaintiff argued that the forklift he was operating was defective because it lacked a cage or guard around the operator compartment to prevent the operator from being pinned under the forklift. *Id.* at 651. Plaintiff's proposed expert expressed confidence that an effective safety device could be created that would not interfere with the operation of the forklift. *Id.* at 652. The Eighth Circuit held that the proposed expert lacked a basis for his conclusion because he had not even attempted to design the suggested safety device. *Id.* Thus, the proposed expert's theory was testable but had not been tested, and his testimony was excluded. *Id.* Here, Romansky is unwilling to commit to the proposition that a safer alternative design exists. Had Romansky actually proposed a design, however, the design could have been tested. Thus, while Romansky's hypotheses are capable of being tested, they have not been. His testimony on alternative designs is properly excluded in accordance with *Daubert.* He has no basis for concluding that the forklifts are unreasonably dangerous based on design defect.

As to warnings, Romansky testified in his deposition that he had not formed an opinion to a reasonable degree of certainty as to whether any alternative warning would have prevented Plaintiff's injury. Romansky could not state that an additional warning would have made it more probable than not that the accident could have been avoided. On this subject, Romansky

has not offered an opinion for the court to exclude.[2]

### ii. James R. Driver

 Driver has operated forklifts and trained others to operate forklifts. (Def.'s Mot. for Summ. J. at Ex. 7.) He has written and implemented safety programs for forklift use. (*Id.*) He has been employed as a safety director in industrial settings and taught industrial safety and principles of safety at the university level. (*Id.*)

Driver admitted that he had never designed a forklift and was not an expert in the design of forklifts. (*Id.*) He also stated that he was not offering an opinion that the forklift was defectively designed. (*Id.*) Driver does not claim to be an expert in this field and he is not qualified as such.

Driver's report addresses whether Raymond should have provided additional warnings. (*Id.*) Driver, however, had not prepared any alternative warnings that Raymond should have used and had not thought about what such warnings should say. (*Id.*) He agreed that the effectiveness of warnings in increasing the user's care could be empirically tested. (*Id.*) He also volunteered that, when it comes to safety training, most forklift operators have the attitude that "you can't tell me a damn thing." (*Id.*) At the time of the accident, neither Brown nor Gause followed the existing safety warning provided by Raymond to stop at all intersections and sound the horn. (*Id.*) Driver opined that an additional warning could possibly have prevented the accident, but he could not say additional warnings would probably or certainly have prevented the accident. (*Id.*) His basis for stating that a hypothetical warning could have prevented the accident

was that "nobody's ever dreamed . . . of one machine having the ability to enter the operator compartment and injure you by a crushing blow on another identical machine." (*Id.*) Driver acknowledged that, while the entry of the wheel well of one forklift into the operator compartment of another might have been unexpected, it was obvious that objects could enter the open operator compartment. (*Id.*)

Driver's testimony would not assist the trier of fact in this case. Driver admits that it would be possible to test a warning to assess its efficacy. Yet Driver, like Romansky, has not formulated anything which could be tested. Thus, Driver has no basis for his conclusion that a warning could have prevented the accident or that the forklift is unreasonably dangerous. *See Dancy*, 127 F.3d at 652.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to strike Plaintiff's experts is GRANTED. Defendant's motion for partial summary judgment also is GRANTED.

---

**2.** Plaintiff states that both Romansky and Driver opine that Raymond "failed to warn that the wheel well of one forklift can protrude into the operator compartment of another." These are not opinions. It is undisputed that there was no such warning. The question is, would such a warning have increased user care, thus increasing the chances of avoiding the danger.