*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0481p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

EDWARD BROWN,

        *Plaintiff-Appellant,*

QUEBECOR, INC.,

        *Intervening*
        *Plaintiff-Appellant,*

    *v.*

THE RAYMOND CORPORATION,

        *Defendant-Appellee.*

No. 04-6154

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-02771—Samuel H. Mays, Jr., District Judge.

Argued: October 24, 2005

Decided and Filed: December 21, 2005

Before: RYAN, GILMAN, and COOK, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Michael W. Whitaker, Covington, Tennessee, for Appellants. Francis H. LoCoco, QUARLES & BRADY, Milwaukee, Wisconsin, for Appellee. **ON BRIEF:** Michael W. Whitaker, Covington, Tennessee, Deana C. Seymour, RAINEY, KIZER, BUTLER, REVIERE & BELL, Jackson, Tennessee, for Appellants. Francis H. LoCoco, Joshua B. Fleming, QUARLES & BRADY, Milwaukee, Wisconsin, Larry E. Killebrew, BUTLER, SNOW, O'MARA, STEVENS & CANNADA, Memphis, Tennessee, for Appellee.

    GILMAN, J., delivered the opinion of the court, in which COOK, J., joined. RYAN, J. (p. 9), delivered a separate opinion concurring in the judgment.

_____

### OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. Edward Brown, a forklift operator at Quebecor, Inc.'s plant in Covington, Tennessee, suffered serious injuries when his forklift collided with that of another employee in October of 2001. Brown brought this diversity-of-citizenship suit against forklift manufacturer The Raymond Corp. (Raymond) under the Tennessee Products Liability Act (TPLA), alleging that the forklift was unreasonably dangerous due to a defective design, defective brakes, and inadequate warnings.

1

In a series of rulings, the district court (1) found that the "prudent-manufacturer test" applied to the design of a forklift, (2) excluded the expert testimony proffered by Brown, and (3) granted summary judgment in favor of Raymond on all claims.

Brown argues on appeal that the district court erred in applying the prudent-manufacturer test instead of the consumer-expectation test. He also maintains that the district court improperly excluded the testimony of his expert witnesses, abused its discretion in treating Raymond's motion for clarification as a renewed motion for summary judgment on his defective-brakes claim, and erred in granting summary judgment to Raymond on both that claim and the other claims. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.      Factual background

The underlying facts are undisputed. Brown is an experienced forklift operator who worked as a material handler at Quebecor's facility in Covington, Tennessee. While at Quebecor, Brown operated an EASi Reach model forklift, which is a rear-entry, stand-up, narrow-aisle forklift manufactured by Raymond.

On October 16, 2001, Brown was driving his forklift along an east-west corridor at the Quebecor plant when he collided with a forklift operated by Charles Gause, who was traveling south on a corridor that intersected the one traveled by Brown. The wheel well of Gause's forklift entered the operator compartment of Brown's forklift, crushing Brown's left foot. That foot eventually had to be amputated. Both Brown and Gause had previously been trained in the operation of the EASi Reach model forklift, and both had read the accompanying instruction manual.

### B.  Procedural background

Brown, a citizen of Tennesee, filed suit against Raymond, a New York corporation, under the TPLA, Tenn. Code Ann. §§ 29-28-101 to -108 (West 2005). In the suit, Brown alleged that Raymond had sold the forklift in a defective and unreasonably dangerous condition, that Raymond had provided inadequate warnings, and that the brakes were not working properly at the time of the accident. The district court issued a scheduling order that set dates for the completion of discovery and for the filing of dispositive motions. In accordance with those dates, Raymond filed both a motion to exclude the expert testimony offered by Brown and a motion for summary judgment, which the district court construed as a motion for partial summary judgment because Brown's defective-brakes claim was not specifically addressed.

The district court excluded the deposition testimony of the two experts offered by Brown— Dr. Michael Romansky and James Driver. Romansky, who is both a lawyer and an industrial engineer, testified by deposition that the forklift was unreasonably dangerous because Raymond could have identified the problem of one forklift's wheel well intruding into the operator compartment of another and could have "eliminated the hazard." *Brown v. The Raymond Corp.*, 318 F. Supp. 2d 591, 599-600 (W.D. Tenn. 2004). At the same time, Romansky admitted that he had no expertise in forklifts and that he had no alternative design to offer that would have eliminated the perceived safety hazard. Applying Rule 702 of the Federal Rules of Evidence as interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court ruled that Romansky's testimony was unreliable and would not aid the trier of fact. *Brown*, 318 F. Supp. 2d at 599.

The second expert, James Driver, was an experienced forklift operator and trainer who testified that the warnings provided by Raymond were inadequate. But Driver admitted that he had not formulated or tested any alternative warnings. The district court therefore excluded his testimony as well, holding that Driver's factual bases were inadequate to support the conclusions that he had reached. *Id.* at 600.

Interpreting the TPLA and the caselaw construing it, the district court concluded that only the prudent-manufacturer test—not the consumer-expectation test—applied in assessing the dangerousness of a forklift, which is a complex industrial machine. *Id.* at 597-98. Because expert testimony was necessary to prove a prima facie case under that test and because the testimony of Brown's experts had been excluded, the court granted partial summary judgment in favor of Raymond on the defective-design and inadequate-warning claims. *Id.* at 600.

Raymond then filed a motion for clarification, arguing that it had previously sought summary judgment on *all* claims, including the allegation of defective brakes, and that it had addressed Brown's defective-brakes claim in a reply brief filed after the dispositive motions deadline. Although the district court ruled that Raymond's request for summary judgment on the defective-brakes claim had been untimely, it ordered Brown to respond to Raymond's motion with evidence showing that genuine issues of material fact were in dispute on this issue. Following Brown's response, the district court granted Raymond's motion for summary judgment on the defective-brakes claim as well. This timely appeal followed.

## II. ANALYSIS

### A.    Summary judgment standard

The district court's grant of summary judgment is reviewed de novo. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.    Proper legal standard for assessing dangerousness

Brown's primary contention on appeal is that the district court erred by applying the prudent-manufacturer test to the exclusion of the consumer-expectation test. In fact, Brown's counsel candidly conceded at oral argument that, if the prudent-manufacturer test is indeed the appropriate legal standard in this case, then Brown cannot prevail. "Whether the proper legal standard was applied . . . is a legal question that this court reviews de novo." *United States v. Willis*, 257 F.3d 636, 642 (6th Cir. 2001).

Under the TPLA, a plaintiff can prove that a product is unreasonably dangerous by showing either that the product was more dangerous than an ordinary consumer "with the ordinary knowledge common to the community" would have contemplated (the consumer-expectation test) *or* that a "reasonably prudent manufacturer or seller" would not have distributed the product in the condition in which it was sold (the prudent-manufacturer test). Tenn. Code Ann. § 29-28-102(8); *see Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527, 531 (Tenn. 1996) (discussing the contours and use of each test). Although the consumer-expectation test and the prudent-manufacturer test "are neither mutually exclusive nor mutually inclusive," *id.*, several decisions have recognized that "the prudent manufacturer test will often be the *only* appropriate means for establishing the unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation." *Id.* (emphasis added); *accord Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 969 (M.D. Tenn. 2002) (concluding that, under Tennessee law, only the prudent-manufacturer test applied where the victim alleged that a complex automotive tool was unreasonably dangerous), *aff'd*, 89 F. App'x 927, 929 (6th Cir. 2003) (unpublished). The plaintiff must offer "expert testimony about the prudence of the decision to market" when the prudent-manufacturer test applies. *Ray ex rel. Holman*, 925 S.W.2d at 531.

In the present case, Brown maintains that more recent Tennessee Supreme Court decisions have required the application of the consumer-expectation test in all products liability cases in which the plaintiff

is alleging unreasonable dangerousness. *See Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 806 (Tenn. 2001) (holding that "the consumer expectation test is applicable to any products liability case in which a party seeks to establish that a product is unreasonably dangerous"). The *Jackson* Court, however, limited this holding by repeating its earlier warning that "plaintiffs in cases involving highly complex products" will often be unable "to establish that the product is dangerous to an extent beyond that which would be contemplated by an ordinary consumer, even though the consumer expectation test may, technically, apply." *Id.*; *see also Irion v. Sun Lighting, Inc.*, No. M2002-00766-COA-R3-CV, 2004 WL 746823, at *6 (Tenn. Ct. App. April 7, 2004) (unpublished) (acknowledging that "there may be situations where the consumer expectation test is not adequate . . . because, in order to be successful under the consumer expectation test, the plaintiff must prove that the ordinary consumer has an expectation regarding the safety of the product") (citations omitted).

Furthermore, courts applying the TPLA since *Jackson* have continued to rule that the complexity of a product forecloses the use of the consumer-expectation test. *See Coffey*, 187 F. Supp. 2d at 969 ("[A]lthough *Jackson* stands for the proposition that the consumer expectation test is theoretically applicable to all situations, even that Court acknowledged that ordinary consumers would have no expectations regarding certain products and certain failures."); *Brown v. Crown Equip. Corp.*, No. W2002-02228-COA-R3-CV, 2004 WL 350658, at *7 (Tenn. Ct. App. Feb. 25, 2004) (unpublished) (requiring a plaintiff who was injured by an allegedly defective forklift to present expert testimony in setting forth a prima facie case under the TPLA), *rev'd on other grounds*, *Brown v. Crown Equip. Corp.*, __S.W.3d__, 2005 WL 2787845, at *11 (Tenn. Oct. 27, 2005).

Like the district court, we believe that an allegation that a forklift was defectively designed is precisely the type of "situation" in which the "ordinary consumer" would not have "an expectation regarding the safety of the product." *Irion*, 2004 WL 746823, at *6. The district court was therefore correct in refusing to accord undue weight to the broad statement from *Jackson* cited by Brown, and instead applying the prudent-manufacturer test.

Brown nevertheless maintains that complex products have been subjected to the consumer-expectation test and that even complex products have simple aspects to them. He cites to a series of cases in which courts both inside and outside of Tennessee have evaluated the dangerousness of a product under the consumer-expectation test or a variant thereof. These cases, however, are either inapposite or distinguishable. Brown first points to the following three cases from this circuit that applied Ohio law: *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445 (6th Cir. 2000); *Adkins v. GAF Corp.*, 923 F.2d 1225 (6th Cir. 1991); and *Sours v. Gen. Motors Corp.*, 717 F.2d 1511 (6th Cir. 1983).

In those cases, this court applied Ohio's consumer-expectation test—which has since been statutorily repealed, *see Bleh v. Biro Mfg. Co.*, 756 N.E.2d 121, 124 (Ohio Ct. App. 2001)—to an automobile airbag system, raw asbestos fiber, and the roof of an automobile, respectively. Regardless of whether courts applying *Ohio's* "single two-pronged test for determining whether a product is defectively designed" would permit plaintiffs injured by an allegedly defective forklift to proceed under the consumer-expectation test, *Perkins v. Wilkinson Sword, Inc.*, 700 N.E.2d 1247, 1248 (Ohio 1998) (citation omitted), our inquiry is limited to determining what Tennessee courts would do under these circumstances. *See Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 621 (6th Cir. 2001) ("To the extent that the state supreme court has not yet addressed the issue presented, it is [the federal courts'] duty to anticipate how that court would rule.") (citation omitted).

Turning then to the five Tennessee cases cited by Brown, we note that all but one of them predate the Tennessee Supreme Court's decision in *Ray ex rel. Holman*, in which that Court authoritatively construed the TPLA as containing two separate tests for liability. 925 S.W.2d at 530. One of the cited cases, moreover, applies the Restatement of Torts instead of the TPLA because the allegedly tortious conduct occurred prior to the enactment of the TPLA. *See Gann v. Int'l Harvester Co. of Canada*, 712 S.W.2d 100, 103 n.1 (Tenn. 1986). In two of the other cases, the Tennessee Court of Appeals ruled in favor

of the defendants even when applying the consumer-expectation test, thus obviating the need to address any other tests. *See Goode v. Tamko Asphalt Prods., Inc.*, 783 S.W.2d 184, 187 (Tenn. Ct. App. 1989) (granting the defendants judgment as a matter of law in a suit alleging that asphalt roof shingles were unreasonably dangerous); *Neal v. Boggs*, No. 02A01-9612-CV-00305, 1997 WL 563221, at *3 (Tenn. Ct. App. Sept. 8, 1997) (unpublished) (affirming the grant of summary judgment in favor of the defendants in a suit alleging that a "uni-loader" tractor was unreasonably dangerous). The fourth case, *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 299-300 (Tenn. Ct. App. 1995), also predated *Ray ex rel. Holman*, and the failure of the defendants to raise—and the court of appeals to address—the applicability of the prudent-manufacturer test is therefore not surprising. These cases, none of which even mentions the prudent-manufacturer test, do not convince us that all product-liability plaintiffs are invariably entitled to invoke the consumer-expectation test in suits under the TPLA.

The only one of the five Tennessee cases that cuts in favor of Brown's position is *Hughes v. Lumbermens Mutual Casualty Co.*, 2 S.W.3d 218 (Tenn. Ct. App. 1999), where the primary issue was whether the defendant's compliance with OSHA regulations created a rebuttable presumption that the wheel rim that it manufactured was not unreasonably dangerous. In another part of its opinion, the *Hughes* court relied on the Tennessee cases discussed and distinguished above and, quoting selectively from *Ray ex rel. Holman*, concluded that the statutory term "ordinary consumer" referred to "the customary or usual consumer of the product." *Id.* at 226. Adopting that definition, the court then held that the trial judge had erred in failing to instruct the jury on the consumer-expectation test. *Id.* The applicability and requirements of the prudent-manufacturer test, however, were neither raised by the parties nor addressed by the court. Furthermore, the *Hughes* court's reading of *Ray ex rel. Holman* ignores the Supreme Court's statement that the consumer-expectation test "[o]bviously . . . can only be applied to products about which an ordinary consumer would have knowledge." 925 S.W.2d at 531; *see also id.* at 533 ("[T]he consumer expectation test will be inapplicable, by definition, to certain products about which an ordinary consumer can have no expectation."); *accord Jackson*, 60 S.W.3d at 803 (reciting the same principle).

To the extent that *Hughes* conflicts with *Ray ex rel. Holman* and *Jackson*, we are of course bound by the Tennessee Supreme Court's construction of the TPLA, not that of the Tennessee Court of Appeals. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (observing that federal courts in diversity cases "apply state law in accordance with the controlling decisions of the state supreme court"). *Hughes* also appears to conflict with the subsequent decisions by the federal district courts and Tennessee appellate courts cited above, and we find these latter authorities more persuasive. Our reasoning is simple: the TPLA, like the section of the Restatement (Second) of Torts on which it is based, requires a plaintiff invoking the consumer-expectation test to prove that the product "is dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, *with the ordinary knowledge common to the community as to its characteristics . . . .*" Tenn. Code Ann. § 29-28-102(8) (emphasis added). We think that this straightforward statutory language, when combined with the Tennessee Supreme Court's interpretation of that language in *Ray ex rel. Holman* and *Jackson*, leaves no room for the reading advanced by Brown in his appeal.

Our reliance on the language and logic of the decisions in *Ray ex rel. Holman* and *Jackson* causes us to respectfully disagree with our concurring colleague's assertion that we have "chosen to interpret a statutory provision never before interpreted by the Tennessee Supreme Court and pronounce a new rule of Tennessee state product liability law." To the contrary, we are performing a function that federal courts routinely undertake in diversity cases—namely, that of applying a state supreme court's controlling construction of a statute to the specific facts of the case before us.

As noted above, we also agree with the district court that a forklift is a complex machine beyond the purview of the ordinary consumer and that Brown was therefore obligated to provide expert testimony in order to survive a motion for summary judgment. The district court relied on both the *Coffey* decision and the Tennessee Court of Appeals's unpublished opinion in *Brown* in reaching its conclusion. Shortly after we heard argument in the present case, the Tennessee Supreme Court reversed the appellate court's decision

in *Brown* and remanded the case for trial. *See Brown v. Crown Equip. Corp.*, __S.W.3d__, 2005 WL 2787845, at *11 (Tenn. Oct. 27, 2005). This recent Supreme Court opinion, however, is fully consistent with our reading of Tennessee law and that of the district court.

In *Brown*, the plaintiff forklift operators sued the manufacturer under the TPLA, invoking the prudent-manufacturer test. The trial court granted the manufacturer's motion to exclude the expert testimony offered by the plaintiffs and later entered a directed verdict for the manufacturer. After the court of appeals affirmed, the Supreme Court reversed and remanded for a new trial, holding that the trial court had improperly excluded the expert testimony that the plaintiffs needed to satisfy the prudent-manufacturer test. 2005 WL 2787845, at *9. The *Brown* Court cited with approval both *Ray ex rel. Holman* and *Jackson*, and made no mention of the consumer-expectation test.

Far from contradicting our decision today, we think that *Brown* helpfully clarifies that a forklift is a complex machine whose safety is best evaluated using the prudent-manufacturer test—a test under which expert testimony is required in order to reach the jury. *See Ray ex rel. Holman*, 925 S.W.2d at 531 (calling expert testimony "essential" to satisfying the prudent-manufacturer test); *Coffey*, 89 F. App'x at 929 (recognizing that "expert testimony is essential to a claim based on the prudent manufacturer test" and affirming a grant of summary judgment where the district court had properly excluded expert testimony proffered by an injured plaintiff). We thus conclude that the legal standard applied by the district court in the present case is fully consistent with *Brown*, and that the different end result is due solely to the factual evaluation of the expert testimony tendered by the plaintiffs in the respective cases.

## C.      Exclusion of the expert testimony offered by Brown

Having established that allegations that a forklift suffers from design defects are properly evaluated under the prudent-manufacturer test, we turn now to Brown's argument that the district court erred in excluding the proposed testimony of Dr. Romansky and James Driver. We "review[] the admission or exclusion of expert evidence for an abuse of discretion," *United States v. Demjanjuk*, 367 F.3d 623, 633 (6th Cir. 2004), according the trial court "broad latitude" in determining the reliability or relevance of the testimony. *Id.* at 635; *Barnes v. Kerr Corp.*, 418 F.3d 583, 588 (6th Cir. 2005). A district court abuses its discretion if it bases "its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 248 (6th Cir. 2001) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

We are of the opinion that the district court properly applied both the Supreme Court's decision in *Daubert* and relevant post-*Daubert* caselaw in excluding the testimony of Romansky and Driver. First, the district court rejected Romansky's testimony because Romansky was not an expert in forklift design and had not proposed any alternative designs against which to test his conclusion that the Raymond forklift was unreasonably dangerous due to a design defect. The availability of alternative designs is relevant because it is an important factor to be considered in the risk-utility test articulated by the Tennessee Supreme Court in *Ray ex rel. Holman*. *See* 925 S.W.2d at 533 n.10 (providing a nonexhaustive list of seven factors to be considered under the prudent-manufacturer test). Romansky's failure to present and test an alternative design justifies the conclusion of the district court that his testimony would not aid the trier of fact. *See Darcy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997) (affirming the district court's exclusion of testimony by an expert who had never designed a forklift or lift truck and who had neither presented nor tested an alternative to the manufacturer's design).

In addition to *Darcy*, on which the district court explicitly relied, we believe that the Seventh Circuit's decision in *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001), fully supports the district court's decision to exclude the testimony of both Romansky and Driver. Dhillon, who was a forklift operator injured while using a forklift, sued the manufacturer, alleging that the forklift suffered from a defective design, inadequate warnings, and a defective braking system—the very same allegations that Brown made in his complaint. The district court in *Dhillon*, applying the *Daubert* decision, ruled that the

testimony of two experts offered by the plaintiff was inadmissible. Without that testimony, Dhillon could not prevail in his products liability suit, and the district court therefore granted summary judgment in favor of the manufacturer. The Seventh Circuit affirmed, emphasizing that neither of the two experts had either designed a forklift of that model or performed tests that would demonstrate the safety or feasability of an alternative design. *Id.* at 870. Such tests were crucial, the Seventh Circuit said, because "an expert needs to look at a number of considerations," many of which are "product- and manufacturer-specific and cannot be reliably determined without testing." *Id.*

Echoing the reasoning of the Seventh Circuit, the district court in the present case ruled that Romansky's failure to empirically test his theories with alternative designs undermined the reliability of his testimony because "the design of industrial equipment is a complex process and changes to prevent one problem could create other problems, thus increasing the overall danger of using a product." *Brown*, 318 F. Supp. 2d at 599. Romansky's testimony was therefore excluded after the district court conducted a detailed analysis that is consistent with *Daubert* and directly in line with the Seventh Circuit's decision in *Dhillon*. In sum, none of the authorities cited by Brown convinces us that the district court abused its discretion in excluding Romansky's testimony.

The district court conducted a similarly thorough analysis regarding the testimony of James Driver, concluding that Driver's failure to propose alternative warnings subject to empirical testing rendered his testimony unreliable and irrelevant to the trier of fact. *Id.* at 600. We find no basis to hold that the district court's ruling was premised "on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Nelson*, 243 F.3d at 248; *see also Dhillon*, 269 F.3d at 870 (holding that "conclusions based only on personal opinion and experience do not suffice" to establish the reliability or utility of expert testimony). The exclusion of Driver's proposed testimony, therefore, was not an abuse of the district court's discretion.

## D.     District court's conduct of the summary judgment proceedings

Brown next insists that the district court abused its discretion by "sua sponte" converting Raymond's motion for clarification into a renewed motion for summary judgment on Brown's defective-brakes claim. Although this circuit has not previously addressed a situation in which a district court has converted a motion for clarification into a motion for summary judgment, it has held that a decision to grant summary judgment sua sponte will not be set aside unless the ruling constitutes an abuse of discretion. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005) ("When a district court grants summary judgment sua sponte, its decision is subject to two separate standards of review. The substance of the district court's decision is reviewed de novo under the normal standards for summary judgment. The district court's procedural decision to enter summary judgment sua sponte, however, is reviewed for abuse of discretion.") (citation omitted).

A district court does not abuse its discretion in granting summary judgment sua sponte when the party adversely affected is put on notice to produce evidence establishing that a genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (repeating the "widely acknowledged" view that district courts "possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence"); *Bennett*, 410 F.3d at 816 ("A district court does not abuse its discretion in sua sponte granting summary judgment so long as the losing party was on notice that it had to come forward with all of its evidence and had a reasonable opportunity to respond to all the issues to be considered by the court.") (citation and alterations omitted).

In the present case, the district court's June 4, 2004 order explicitly informed Brown that the court was considering Raymond's request for summary judgment on the remaining issue of defective brakes, and gave Brown "the opportunity to respond to the request" and "to file a response to the arguments raised . . . ." This order, to which Brown did in fact respond, provided Brown with ample notice of the court's handling of the proceedings. We therefore conclude that the district court did not abuse its discretion in taking up Raymond's renewed request for summary judgment.

**E.      Summary judgment on Brown's defective-brakes claim**

Having held that the district court did not abuse its discretion in considering Raymond's request for summary judgment on the defective-brakes claim, we also find that the district court correctly ruled that Brown had made design-defect allegations that required expert testimony to sustain them. As the court observed, Brown maintained in his deposition that the issue was not simply that the brakes on *his* forklift had failed, but that *all* of the nine forklifts in the batch purchased by Quebecor had faulty brakes. Brown repeats this line of argument in his appellate brief, alleging that at least "half" of the nine forklifts failed to stop quickly enough.

The district court properly read Brown's submissions as attempting to state another products-liability claim, one that would also be subject to the prudent-manufacturer test and would therefore require expert testimony. On this issue, we note that one of Brown's own expert witnesses—James Driver—flatly contradicted Brown's allegations, stating instead that Driver's review of the maintenance records led him to conclude that "the brakes were working excellent[ly] at the time of the event." Whether or not Driver's assessment was accurate, Brown did not offer any other relevant expert whose testimony supported Brown's contention that the forklift brakes were defectively designed. Brown therefore failed to make out a prima facie case, and Raymond was entitled to summary judgment on this claim.

### III.  CONCLUSION

Because the district court applied the appropriate legal standard, did not abuse its discretion in excluding expert testimony that failed to satisfy the *Daubert* test, and correctly concluded that Raymond was entitled to summary judgment on all claims, we **AFFIRM** the decision below in all respects.

---
**CONCURRENCE**
---

RYAN, Circuit Judge, concurring in the judgment. In my opinion, if a federal court exercising its diversity jurisdiction can properly decide the case before it without declaring a new rule of state law—for example, interpreting a provision of a state statute not previously interpreted by the state's highest court—it should do so. This is such a case.

This case can be decided under familiar federal summary judgment rules, without this court venturing an educated guess as to which dangerousness test applies under Section 102(8) of the Tennessee Products Liability Act of 1978. TENN. CODE ANN. § 29-28-102(8). For purposes of deciding this appeal, it does not matter whether the alleged dangerousness of the Raymond Corporation's forklift is measured by the Tennessee consumer expectation test, as Brown argues, or the prudent manufacturer test as Raymond and my colleagues argue, because, under either test, Raymond is entitled to summary judgment.

If the consumer expectation test applies, and the relevant consumer is, as Brown argues, "the ordinary consumer who purchases [the forklift]," *id.*, and not the average lay juror as my colleagues insist, Raymond is entitled to summary judgment because Brown has made no showing whatever that even a highly trained and experienced consumer of Raymond's product would have *any* expectation about the safety of the forklift, much less a showing that the forklift "is dangerous to an extent beyond that which would be contemplated by the ordinary [forklift] consumer who purchases it," *id.*

And if the prudent manufacturer test applies as Raymond and my colleagues claim, Raymond is entitled to summary judgment because the district court did not abuse its discretion by excluding the opinion testimony of Driver and Romansky, and Brown has produced no other evidence to show that "a reasonably prudent manufacturer or seller," *id.*, of the forklift would not have put it on the market because of its "dangerous condition," *id.*

Unfortunately, and contrary to settled and familiar principles of state/federal judicial deference, my colleagues have chosen to interpret a statutory provision never before interpreted by the Tennessee Supreme Court and pronounce a new rule of Tennessee state product liability law. The result is a published majority opinion that is entirely *dicta*. Worse, it is an imposition on the Tennessee courts, particularly given that the Tennessee Court of Appeals has held that the "ordinary consumer" in the TPLA is the ordinary consumer of the product, rather than the average lay juror, as the majority opinion holds. *See Hughes v. Lumbermens Mut. Cas. Co.*, 2 S.W.3d 218, 226 (Tenn. Ct. App. 1999).

I concur fully in Judge Gilman's disposition of Brown's claims regarding the inadmissability of the proffered opinion testimony, the district court's handling of the summary judgment proceedings, and the grant of summary judgment in favor of Raymond on the defective brakes claim. But as to the majority's interpretation of the language of Tennessee's consumer expectation test, and whether that test should be applied in this case, I concur in the judgment only.